**In re Milton P. KOBALY, t/d/b/a Trocadero Motor Lodge, Debtor.**

**Milton P. KOBALY, Plaintiff**

v.

**Robert H. SLONE, Trustee, and Charleroi Federal Savings & Loan Association, Defendants.**

**Bankruptcy No. 84–0340–BM. Adv. No. 92–0013–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 28, 1992.

K. Lawrence Kemp, Kemp and Kemp, New Kensington, Pa., for debtor.

David J. Humphreys, Humphreys, Nubani & Breault, P.C., Pittsburgh, Pa., for defendant Charleroi Federal Sav. & Loan Ass'n.

Robert C. Edmundson, Senior Deputy Atty. Gen., Office of Atty. Gen., Pittsburgh, Pa.

Robert H. Slone, Greensburg, Pa., Chapter 7 Trustee, Office of U.S. Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Several matters are before the court at this time.

Debtor seeks a determination in Adversary No. 92–0013–BM that an eminent domain award of $162,000.00 arising out of damage done to a motel owned by debtor at the time the bankruptcy petition was filed is not property of the bankruptcy estate. Debtor also seeks a determination that Charleroi Federal Savings & Loan Association ("Charleroi") does not have a secured interest in the proceeds of the eminent domain award. Debtor has moved for summary judgment in his favor with respect to these issues. The chapter 7 trustee and Charleroi, defendants in the adversary action, have responded with cross-motions for summary judgment in their favor. All parties agree that the court is in a position to make a determination on the basis of the present record. Summary judgment will be entered in favor of the trustee and Charleroi and against debtor.

Also, debtor seeks to amend Schedule B–4 in order to exempt the *entire* eminent domain award. He seeks to exempt $154,100.00 or, alternatively, $20,000.00 pursuant to 11 U.S.C. § 522(d)(11)(E)[1] and the remaining $7,900.00 pursuant to 11 U.S.C. § 522(d)(5). Charleroi and the Commonwealth of Pennsylvania Department of Revenue ("Commonwealth") have objected to the exemptions on various grounds. Debtor's claimed exemption of $154,100.00 pursuant to 11 U.S.C. § 522(d)(11)(E) will be disallowed in its entirety. The exemption of $7,900.00 pursuant to § 522(d)(5) will be allowed.

–I–

## FACTUAL BACKGROUND

Debtor had owned and operated a motel known as Trocadero Motor Lodge ("motel") since the 1950's. The motel was located on Pennsylvania Route 201 at its intersection with Interstate 70 in Rostraver Township, Pennsylvania.

On February 23, 1981, debtor executed a mortgage note in the amount of $220,000.00 in favor of Charleroi. That same day, debtor granted Charleroi a mortgage in the motel. Said mortgage contained the following provision:

> In the event the premises covered by this mortgage, or any part thereof, shall be condemned or taken from it, injured or destroyed for public use under the power of eminent domain, the Mortgagor herein does hereby assign to the Mortgagee all

---

1. Debtor has conceded in a post-hearing brief that he is *not* entitled, in light of the evidence adduced at the hearing, to the full amount of the exemptions claimed under § 522(d)(11)(E). He now concedes that it would be appropriate to limit the exemption claimed pursuant to § 522(d)(11)(E) to $139,141.69 (as opposed to $154,100.00) or to $14,586.00 (as opposed to $20,000.00).

damages awarded for the taking of, injury to, destruction of, or damage to the premises, up to the total amount owing under any and all of the terms of this Mortgage.

Debtor filed a voluntary chapter 11 petition on February 16, 1984, and continued operating the motel as debtor-in-possession pursuant to 11 U.S.C. § 1108.

On August 7, 1984, Charleroi filed a proof of claim in the amount of $306,884.89 in which Charleroi claimed that it was secured by virtue of the mortgage. Attached to its proof of claim was a copy of the mortgage note and the mortgage, which included the just-quoted provision.

In August of 1985, approximately eighteen (18) months after debtor had filed for bankruptcy, the Commonwealth of Pennsylvania Department of Transportation ("PENNDOT") undertook reconstruction of Route 201. A continuous medial strip and a curb were installed.

Debtor brought an eminent domain action against the Commonwealth late in 1986 in the Court of Common Pleas of Westmoreland County, Pennsylvania, alleging a *de facto* condemnation pursuant to 26 P.S. § 1–502(e) and requesting appointment of a board of viewers. Debtor did not advise this court at that time of the eminent domain proceeding and unilaterally decided to retain counsel to represent him in the matter. Prior court approval of counsel's retention was neither sought nor granted. The Commonwealth responded by claiming that there had been no taking and denied that debtor was entitled to just compensation.

An order was issued by the state court on October 8, 1986, appointing a board of viewers to view the premises, to hold a hearing, and to determine the amount of damages, if any, to be awarded.

On February 17, 1987, Charleroi filed a motion which requested, *inter alia,* that the bankruptcy case be converted to a chapter 7 proceeding. After due notice and hearing, the motion was granted and the case was converted by an order of court issued on March 17, 1987. Robert H. Slone was appointed chapter 7 trustee the following day.

A section 341 meeting of creditors was conducted by the trustee on April 10, 1987. Debtor attended the meeting and disclosed upon examination by the trustee the existence of the eminent domain proceeding in state court.

An order was entered by this court on May 21, 1987 approving sale of Trocadero Motor Lodge for the sum of $590,000.00. When debtor refused to vacate the premises, an order was entered by this court directing the United States Marshal to evict him.

A Memorandum Opinion and Order were issued on October 20, 1987 by the state court wherein it was determined that the property owner had suffered permanent and unreasonable interference with access to the property as a result of actions taken by PENNDOT.

On February 18, 1988, Charleroi filed an administrative claim in the amount of $79,-805.28 for the balance due under the mortgage note and for unspecified legal actions taken during administration of the estate. A copy of the mortgage note and the mortgage were attached to its proof of claim.

On August 24, 1988, Charleroi filed another proof of claim in the amount of $62,-350.25. An amended proof of claim in the amount of $85,805.28 was filed on September 23, 1988. The proof of claim filed on August 24, 1988 and the amendment of September 23, 1988 inadvertently asserted that Charleroi's claim was unsecured. Neither had a copy of the mortgage note or the mortgage attached thereto.

Debtor filed an amended Schedule B–4 on March 10, 1989, in which he claimed an exemption pursuant to 11 U.S.C. § 522(d)(1) in $7,500.00 of the proceeds realized from the sale of the motel by the trustee. An order was entered after a hearing on July 27, 1989 allowing debtor's exemption.

A hearing was held by the board of viewers on September 7, 1990. Debtor testified about the effect of the highway upon access to the motel. Debtor's expert testified that the value of the property had decreased in value as a result of the construction from $967,000.00 to $675,000.00. The Commonwealth's expert testified that its

value had decreased from $650,000.00 to $591,000.00, a difference of $59,000.00.

On November 15, 1990, an order was entered in state court directing the Commonwealth to deposit the sum of $59,-000.00, the amount of just compensation admitted by the Commonwealth to be due to the condemnee of the subject property, into state court pending further order of that court.

On June 6, 1991, debtor filed another motion to amend Schedule B–4. Debtor claimed as exempt the *entire* $59,000.00 which had been paid into state court pursuant to the order of November 15, 1990. According to debtor, said amount constituted compensation for lost future earnings and therefore was exemptible pursuant to 11 U.S.C. § 522(d)(11)(E). Charleroi, the trustee, and the Commonwealth objected to the motion to amend Schedule B–4.

The board of viewers issued their report at some undetermined time. They held that the condemnee was entitled to consequential damages pursuant to 26 P.S. § 1–612 due to permanent and unreasonable interference with access to the property as a result of the reconstruction of Route 201. Consequential damages of $162,000.00 plus counsel fees, appraisal fees, and engineering fees were awarded to the condemnee. The Commonwealth has appealed the decision of the board of viewers to the Court of Common Pleas pursuant to 26 P.S. § 1–515. The appeal is pending at this time.

On January 8, 1992, debtor filed a complaint at Adversary No. 92–0013–BM in which he sought a declaratory judgment that the eminent domain award was *not* an asset of the bankruptcy estate and a declaration that Charleroi has no security interest in the proceeds of the eminent domain award.

On January 23, 1992, before the objections could be heard to debtor's motion of June 6, 1991 to amend Schedule B–4, debtor filed an amended motion to amend Schedule B–4. The exemptions claimed this time were based on the award of $162,-000.00. Debtor seeks to exempt the *entire* $162,000.00 award. He seeks to exempt $7,900.00 pursuant to the "wild card" exemption at 11 U.S.C. § 522(d)(5). The remaining $154,100.00 is claimed as exempt pursuant to 11 U.S.C. § 522(d)(11)(E) on the theory that said amount represents compensation to debtor for lost future earnings. Alternatively, debtor claims he is entitled to exempt $20,000.00 pursuant to 11 U.S.C. § 522(d)(11)(E) as a business relocation award.

A hearing was held on February 12, 1992 on the objections to debtor's amended motion to amend Schedule B–4.

On March 3, 1992, debtor filed a motion for summary judgment at Adversary No. 92–0013–BM. Charleroi and the trustee responded with cross-motions for summary judgment on March 5, 1992.

–II–

## ANALYSIS

A) Disallowance Of Exemptions In General.

Charleroi maintains that debtor should not be permitted to amend Schedule B–4 so as to exempt the entire eminent domain award because said amendment is prejudicial to creditors. Alternatively, it maintains that said exemptions should be disallowed for the same reason. These arguments are without merit.

■ A debtor may amend a voluntary petition pursuant to Bankruptcy Rule 1009(a) as a matter of course anytime before the case is closed. *Lucius v. McLemore*, 741 F.2d 125, 126 (6th Cir.1984). This rule deprives the court of discretion to require a showing of good cause. *See In re Gershenbaum*, 598 F.2d 779, 781–82 (3d Cir.1979).

■ There are, however, exceptions to this principle. Exceptional circumstances may prevent a debtor from amending schedules. Amendment may be denied upon a showing of bad faith or prejudice to creditors or third parties. *See Matter of Doan*, 672 F.2d 831, 833 (11th Cir.1982). A mere allegation by an objector of bad faith or prejudice is insufficient. Bad faith and/or prejudice must be shown by clear and convincing evidence. *See Matter of*

*Brown,* 56 B.R. 954, 958 (Bankr.E.D.Mich. 1986).

Charleroi has *not* shown by clear and convincing evidence that granting debtor leave to amend or that allowing the claimed exemptions would be prejudicial, in the relevant sense, to creditors. Aside from making a bare allegation to that effect, Charleroi has not bothered to explain the nature of the alleged prejudice. Merely filing an amendment where, as here, the case has not been closed does *not* thereby prejudice creditors. Neither does the requisite prejudice occur merely because a claimed exemption, if, timely, would be allowed. *See Matter of Doan,* 672 F.2d at 833.

Charleroi reminds the court that a claimed exemption may be disallowed if the debtor has attempted to conceal that asset. *See Matter of Doan,* 672 F.2d at 833 (*citing Stewart v. Ganey,* 116 F.2d 1010 (5th Cir.1941)). The court is left to wonder whether debtor would have disclosed the eminent domain proceeding to this court had his case not been converted to a chapter 7 proceeding. However convincing the speculation, the evidence presented is *not* sufficient to support the inference that debtor attempted to conceal the existence of the eminent domain proceeding from the trustee or his creditors. As noted, a meeting of creditors was conducted by the newly-appointed chapter 7 trustee on April 10, 1987, approximately three weeks after the case had been converted to chapter 7. Debtor fully disclosed at the meeting in response to specific questioning the existence of the eminent domain proceeding.

The evidence also establishes that debtor did *not* conceal his bankruptcy filing and its subsequent conversion to chapter 7 from the state court officials hearing the eminent domain action. The board of viewers indicated at the hearing that it had been in contact with the trustee and stated that any award would be paid into state court pending judicial determination of entitlement (debtor or trustee) to the award of damages.

Charleroi has not shown that debtor attempted to conceal the eminent domain proceeding from the trustee and his creditors, or that debtor attempted to conceal his bankruptcy case from the state court hearing the eminent domain action.

B) Property Of The Estate.

Debtor contends in Adversary 92–0013–BM that the eminent domain award is *not* property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a) and that the estate therefore has no interest in the award.

This contention is without merit. Said award is property of the estate pursuant to 11 U.S.C. § 541(a)(6).

It is beyond dispute that debtor had legal title to the motel at the time of the bankruptcy filing on February 16, 1984. As a consequence, the motel became property of the estate pursuant to 11 U.S.C. § 541(a)(1) as of that time. Title to said property no longer resided in debtor.

It follows from this that the bankruptcy estate, not debtor, was entitled as owner of the motel to receive just compensation under the Eminent Domain Code of Pennsylvania for damage to its property resulting from the reconstruction of Route 201.

The *owner* of property at the time of its condemnation is entitled to just compensation. *See In re Condemnation by Commonwealth of Pennsylvania Department of Transportation of Two (2) Billboards Located on T.R. 209,* 69 Pa.Cmwlth. 545, 548, 452 A.2d 81, 83 (1982). Entitlement to just compensation for the taking, injuring, or destruction of property resides in the "condemnee". *See* 26 P.S. § 1–601 (Purdon's Supp.1992). "Condemnee" is defined in the Eminent Domain Code as the owner of the property interest taken, destroyed, or injured, but not including a mortgagee, judgment creditor, or lienholder. *See* 26 P.S. § 1–201 (Purdon's Supp. 1992).

11 U.S.C. § 541(a)(6) provides as follows:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: ...

(6) proceeds ... of or from property of the estate, except such as are earnings

from services performed by an individual debtor after commencement of the case.

■ The term "proceeds" is not defined anywhere in the Bankruptcy Code. However, it is broader than the definition of "proceeds" set forth in the Uniform Commercial Code ("UCC"). *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82–83 (1978) U.S. Code Cong. & Admin.News 1978 p. 5787. The version of § 9–306 of the UCC in effect in Pennsylvania when § 541(a)(6) of the Bankruptcy Code was enacted in 1978 provided as follows:

*Definition of "proceeds".*—"Proceeds" includes whatever is received when collateral is sold, exchanged, collected, or otherwise disposed of ... Money, checks and the like are "cash proceeds". All other proceeds are "non-cash proceeds".

The purpose of the award in this instance was to provide just compensation to the bankruptcy estate for the decrease in value of its property interest. The form of the award was monetary. It follows from the purpose and the form of such an award that said award constitutes "proceeds" derived from estate property to which the estate is entitled in lieu of the loss in value of its interest therein.

■ Section 541(a)(6) of the Code expressly *excludes* from property of the estate proceeds which are earnings from postpetition services performed by an individual debtor. According to debtor, the eminent domain award is not property of the bankruptcy estate because said award was compensation for lost future earnings for postpetition services performed by debtor.

This contention is without merit. The award in question was *not* compensation for lost earnings for postpetition services performed by debtor.

■ The measure of damages for just compensation in an eminent domain proceeding is derived from the difference in the fair market value of the affected property before and after its condemnation. *See Fink v. Commonwealth,* 85 Pa. Cmwlth. 290, 297, 482 A.2d 281, 286 (1984).

The measure of damages for "just compensation" is set forth at 26 P.S. § 1–602(a) (Purdon's Supp.1992):

Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby ...

■ Although lost business may be considered in determining the amount of just compensation, it is to be considered only insofar as it relates to the fair market value of the affected property interest. *See Deer Creek Drainage Basin Authority v. Pacoma,* 87 Pa.Cmwlth. 492, 493, 487 A.2d 1033, 1035 (1985).

■ The fact that the award was for "consequential damages" pursuant to 26 P.S. § 1–612 (Purdon's Supp.1992)—i.e., for damage to property abutting the area of an improvement resulting from change of a road or highway or permanent interference with access thereto—does not alter this conclusion. This measure of damages remains the difference in fair market value of the affected property before and after the condemnation. *See Puloka v. Commonwealth,* 323 Pa. 36, 40, 185 A. 801, 803 (1936).

Debtor's contention that the award was for lost future earnings apparently is based on certain language contained in the report submitted by the board of viewers. For example, they found that debtor had suffered a loss of business; that debtor's gross income had decreased from 1985 to 1986; and that debtor had suffered substantial loss in revenues.

Such reliance is misplaced. The board of viewers did not have unfettered discretion in determining the damages to be awarded. Their award must be based on the provisions of the Eminent Domain Code of Pennsylvania. As noted, said Code does *not* compensate a property owner for lost earnings. Although the board of viewers apparently took into consideration the decline in revenues resulting from the condemnation, they obviously did so in order to ascer-

tain the decrease in the fair market value of the affected property.

C) Exemption Pursuant To 11 U.S.C. § 522(d)(11)(E).

(i) Lost Future Earnings

 Debtor seeks to exempt $154,-100.00 (or $139,141.69)[2] of the eminent domain award pursuant to 11 U.S.C. § 522(d)(11)(E), which provides that:

(d) the following property may be exempted under subsection (b)(1) of this section....

(11) the debtor's right to receive, or property that is traceable to—....

(E) a payment in compensation of loss of future earnings of the debtor, ... to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

The exemption of $154,100.00 claimed pursuant to § 522(d)(11)(E) will be disallowed for several reasons.

Debtor had no "right to receive" any of the eminent domain award. It previously was determined that the bankruptcy estate was the owner of the property at the time of the condemnation in August of 1985 and, as such, was entitled to just compensation for the resultant injury to its property interest. Debtor was not the owner of the property at that time and therefore was not entitled to receive any of the compensation award.

In addition, the award is not "traceable to" any payment in compensation of lost future earnings of debtor. It previously was determined that the award was compensation for the decrease in the fair market value of the property, and was not compensation for lost earnings.

(ii) Business Relocation Damages

The board of viewers did not award business relocation damages pursuant to 26 P.S. § 1–601A(b)(5). In spite of this, debtor alternatively seeks to exempt, pursuant to § 522(d)(11)(E), up to $20,000.00 (or $14,-586.00)[3] in business relocation damages in the event such an award is made on appeal.

Charleroi and the Commonwealth argue that it would be inappropriate for this court to allow the exemption when such an award has not been and indeed may not be made. They also argue that such an exemption should be disallowed because debtor is not entitled to business relocation damages under the Eminent Domain Code.

 These objections are misplaced. It is not for *this* court to determine whether an award of business relocation damages is appropriate in this instance. Such a determination obviously should be made by the court having jurisdiction over the eminent domain proceeding. Should such an award be made, however, it then would become necessary for this court to determine whether the claimed exemption of all or a portion of that award pursuant to 11 U.S.C. § 522(d)(11)(E) is allowable. Judicial economy will be best served if a determination is made at this time whether such an award may be exempted pursuant to § 522(d)(11)(E).

 26 P.S. § 1–601A(b) (Purdon's Supp.1992) provides in relevant part as follows:

Any displaced person who is displaced from his place of business ... shall be entitled ... to damages for dislocation of such business ... as follows....

(5) In lieu of damages under subsection (a) and clause (1), (2), (3) or (4) of this subsection, damages in an amount equal to the average annual net earnings but not more than twenty thousand dollars ($20,000) nor less than one thousand dollars ($1,000).... Payment shall be made only if the business cannot be relocated without a substantial loss of profits ...

Such an award may *not* be exempted pursuant to § 522(d)(11)(E). The above provision expressly states that such damages are for "dislocation of such business" and are *not* intended to compensate one who has been displaced from their place of business for earnings lost as a result of the displacement. Damages provided for in subsection (b)(5) are "in lieu of" those provided for in subsections (b)(1) through (4), all of which are for the purpose of compen-

---

**2.** See footnote 1, *supra.*

**3.** See footnote 1, *supra.*

sating for costs and expenses associated with relocating one's business.

D) Exemption Pursuant To 11 U.S.C. § 522(d)(5).

Debtor seeks to exempt $7,900.00 of the eminent domain award pursuant to the so-called "wild card" provision at § 522(d)(5).

The version of 11 U.S.C. § 522(d)(5) which was in effect when the debtor filed a bankruptcy petition on February 16, 1984 provided that a debtor may exempt:

The debtor's aggregate interest, not to exceed in value $400.00 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property.

Section 522(d)(5) was amended on July 10, 1984 and applied to all bankruptcy cases filed ninety (90) days thereafter—i.e., on October 10, 1984. The amended version of 11 U.S.C. § 522(d)(5), which is still in effect, provides that a debtor may exempt:

The debtor's aggregate interest in any property, not to exceed in value $400.00 plus up to $3,750 of any unused amount of the exemption provided under paragraph (1) of this subsection.

Section 522(d)(1), which is referred to in both versions of § 522(d)(5), has provided at all relevant times that a debtor may exempt up to $7,500.00 in certain types of property. Under the version of § 522(d)(5) in effect for cases filed prior to October 10, 1984, a debtor could exempt up to $7,900.00 in specified property. The effect of the 1984 amendment was to reduce the maximum amount that could be so exempted by $3,750.00. The maximum amount that may be exempted pursuant to the current version of § 522(d)(5) is $4,150.00 rather than $7,900.00.

It is settled law that the nature and extent of a debtor's exemption rights are determined as of the date of the petition. *See In re Washofsky*, 78 B.R. 347, 348 (Bankr.S.D.Fla.1987). The same rule applies even when the case has been converted from chapter 11 to chapter 7. *See In re Magallanes*, 96 B.R. 253, 255 (9th Cir. BAP 1988) (*citing In re Thurmond*, 71 B.R. 596, 598 (D.Or.), *aff'd*, 825 F.2d 414 (9th Cir.1987)). Debtor's entitlement to claim an exemption pursuant to § 522(d)(5) thus is to be determined in accordance with the version in effect as of February 16, 1984—i.e., with the version which allows a debtor to exempt up to $7,900.00 in property.

Neither the trustee nor the Commonwealth has taken a position with respect to this particular exemption. Aside from objecting to the exemption on grounds which already have been considered and rejected, Charleroi has offered no reason why this particular exemption should be disallowed. Consequently, debtor's exemption pursuant to § 522(d)(5) of $7,900.00 of the eminent domain award will be allowed.

E) Charleroi's Secured Status.

Debtor seeks a determination in Adversary No. 92–0013–BM that Charleroi does not have a secured interest in the proceeds of the eminent domain award. He claims that all three proofs of claim filed by Charleroi subsequent to the sale of the motel assert that Charleroi is *un*secured. According to debtor, a secured creditor who erroneously files a claim as an unsecured creditor without making reference to its collateral thereby "waives" its interest in favor of the estate and cannot thereafter assert it. *See Morrison v. Reiman*, 249 F. 97 (7th Cir.1917), *cert. denied*, 245 U.S. 669, 38 S.Ct. 190, 62 L.Ed. 539 (1918).

The contention that Charleroi has "waived" its secured status is without merit. Charleroi's original proof of claim, filed on August 7, 1984, and its "administrative" claim, filed on February 18, 1988, had attached to them copies of the mortgage note and the mortgage containing the previously-quoted provision assigning to Charleroi any eminent domain award for injury to the property. All interested parties were thereby placed on notice of the status of Charleroi's claim. No creditor was prejudiced by the fact that the proofs of claim subsequently filed on August 24, 1988, and September 23, 1988, asserted that Charleroi's claim was *un*secured and did not have copies of the mortgage note and the mortgage attached to them. Also, the cases

relied upon by debtor are inapposite. The creditors in those cases initially had filed an unsecured claim and then attempted after the bar date to file a secured claim. The present case is distinguishable in that Charleroi initially had filed a timely proof of claim which contained indication that its claim was secured.

It was determined previously that the eminent domain award constitutes "proceeds" for purposes of § 541(a)(6). The security interest granted to Charleroi in any eminent domain award for injury to the property extends to such "proceeds" acquired by the estate postpetition. *See* 11 U.S.C. § 522(b).

An appropriate Order shall be issued.

## ORDER OF COURT

AND NOW at Pittsburgh this 28th day of July, 1992, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that debtor's claimed exemption of $154,100.00 pursuant to 11 U.S.C. § 522(d)(11)(E) be and is disallowed in its entirety.

IT IS FURTHER ORDERED that debtor's claimed exemption of $7,900.00 pursuant to 11 U.S.C. § 522(d)(5) be and is allowed.

IT IS FURTHER ORDERED that summary judgment is entered at Adversary No. 92–0013–BM in favor of defendants Robert H. Slone, trustee, and Charleroi Federal Savings & Loan Association and against plaintiff/debtor Milton P. Kobaly.